UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JOHN A. KOSI, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL LITTMAN, *et al.*, <br><br> Defendants. | Case No. 16-cv-6320-LB <br><br> **ORDER DISMISSING CASE** <br><br> [Re: ECF No. 76, 78] |

## INTRODUCTION

This case involves a mortgage loan on the plaintiffs' home. The plaintiffs owe a senior secured debt to the Littman defendants; they also owe a junior secured debt to the Windeler defendants, but that junior debt does not play an operative role here.[1] The parties' dispute centers on a 2014 contract "amendment" whose main purpose was to extend the senior loan's maturity date. The plaintiffs claim that the defendants failed to make mandatory disclosures in connection with that transaction. They also claim that they had and effectively exercised a right to rescind the debt evidenced by the 2014 contract.

---

[1] The Littman defendants are the Bypass Trust of D and G Littman Trust and its trustee, Michael Littman. The Windeler defendants are Windeler Development Group Inc. and Robert Fitzstephens. Mr. Fitzstephens's name is spelled differently in different documents. In signing his own name, this defendant appears to use the spelling, "Fitzstephens," so the court follows his example.

The defendants have moved under Rules 12(b)(1) and 12(b)(6) to dismiss the plaintiffs' claims. (ECF Nos. 76, 78.)[2] All parties have consented to magistrate jurisdiction.[3] This matter can be decided without oral argument. Civil L.R. 7-1(b). The court now grants the defendants' motions. The plaintiffs' claims against the Littman defendants under the federal Truth in Lending Act are dismissed with prejudice for failure to state a claim under Rule 12(b)(6). The court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the remaining California-law claims and dismisses those claims (which are asserted against all defendants) without prejudice.

## STATEMENT

### 1. The Facts

The basic facts can be stated concisely. They are threaded along a secured mortgage loan on 3202 Ortega Avenue in Lafayette, California. Defendant Robert Fitzstephens, acting as an officer of defendant Windeler Development Group, Inc., bought the property in 2006.[4] In connection with this purchase, Windeler signed a promissory note in favor of the Littman Trust.[5] The note was payable on an interest-only basis until July 1, 2011, when a balloon payment for the remainder was due.[6] To secure the loan, Windeler gave the Littman Trust a deed of trust on the property.[7]

The Littman Trust and Windeler amended the note and deed in March 2010.[8] This amendment extended the loan's maturity date to July 1, 2014 and reduced the interest rate from 8% to 6%.[9]

---

[2] Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[3] ECF Nos. 4, 20, 28.

[4] ECF No. 69-1 at 2–12.

[5] *Id.*

[6] *See id.* at 2–3.

[7] *Id.* at 14–18.

[8] *Id.* at 20–27.

[9] *Id.* at 21–22.

The plaintiffs bought the property from Windeler in May 2010.[10] In connection with this purchase, the plaintiffs assumed the promissory note to the Littman Trust.[11] (They also borrowed $145,000 from Windeler as part of this purchase. They gave Windeler a note and a junior deed of trust.[12] This ancillary transaction plays no material role in the present analysis.)

We reach the critical contract in May 2014. In that month the parties amended the note to the Trust a second time.[13] In this "Amendment to Promissory Note and Deed of Trust," the Littman Trust agreed to extend the maturity date (on which the plaintiffs would owe a final balloon payment) from July 1, 2014 to July 1, 2015.[14] The plaintiffs agreed to make interest-only monthly payments by giving the loan servicer a series of advance checks.[15] The May 2014 "Amendment" made other minor changes to the existing note, changes that do not matter to this analysis; otherwise, the 2014 amendment made "no other modifications" to the plaintiffs' existing debt and deed of trust.[16] Indeed, with the 2014 Amendment, the plaintiffs "ratified" the existing contract, "all terms and conditions" of which were said to otherwise "continue unmodified and in full force and effect."[17] The court calls this last, crucial contract the "2014 Amendment" or the "2014 Transaction."

2. The Claims

The plaintiffs brought this suit in November 2016. As far as is relevant here, they raise two claims, both under the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and its associated regulations. Their first claim alleges that the Trust "failed to provide" them with the "information and rescission forms" and "statement containing the material disclosures" that TILA

---

[10] *See* ECF No. 69-2 at 2–12.
[11] *Id.* at 14.
[12] *Id.* at 16–22.
[13] ECF No. 69-3 at 2–9.
[14] *Id.* at 3 (§ 1).
[15] *Id.* at 3 (§ 2).
[16] *See id.* at 3–4.
[17] *Id.* at 4 (§§ 7–9).

requires.[18] They also claim that they "exercised their right to cancel the 2014" Transaction when they filed and served on the Trust a "Notice of Rescission" in October 2016; the plaintiffs thus contend that they owe the Trust nothing and that the Trust's security interest in the property is "void."[19]

The plaintiffs allege other wrongdoing by the defendants but those charges are immaterial to this TILA analysis.

## GOVERNING LAW

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). A claim will normally survive a motion to dismiss if it offers a "short and plain statement . . . showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). This statement "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a mere possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

When considering a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n. 2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. *Shwarz v. United States*, 234 F.3d

---

[18] 1st Am. Compl. – ECF No. 69 at 31 (¶ 132).
[19] *Id.* at 33 (¶¶ 140–41).

428, 435 (9th Cir. 2000). "[W]hen a written instrument contradicts allegations in the complaint to which it is attached," however, "the exhibit trumps the allegations." *Gamble v. GMAC Mortg. Corp.*, 2009 WL 400359, *3 (N.D. Cal. Feb. 18, 2009) (quoting *N. Ind. Gun & Outdoor v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998)).

## ANALYSIS

### 1. Main Analysis — The 2014 "Amendment" Was Not A "Refinancing"

The plaintiffs' TILA claims fail as a matter of law.

"Under TILA and its implementing regulation, Regulation Z, the creditor must disclose, among other things, the amount financed, the annual percentage rate, the payment schedule, total payment, and total sale price." *Austin v. Bank of Am., N.A.*, 2016 WL 6777614, *4 (E.D. La. Nov. 16, 2016); *see* 12 C.F.R. § 1026.18. "Additionally, the creditor must disclose the consumer's right to rescind the transaction up to three business days after either the consummation of the transaction, the delivery of a notice of the right to rescind, or delivery of all material disclosures, whichever occurs last." *Austin*, 2016 WL 6777614 at *4; *see* 15 U.S.C. § 1635.

"Modifications of existing obligations," however, "do not constitute a creation of a new obligation that would give rise to a new rescission right or disclosure requirements." *Austin*, 2016 WL 6777614 at *5; *see* 12 C.F.R. § 1026.20(a). Modifications of an existing loan trigger the disclosure requirements and the right of rescission only if the modification constitutes a refinancing. *See, e.g., Austin*, 2016 WL 6777614 at *4–5; 12 C.F.R. § 1026.20(a). "A refinancing is a new transaction requiring new disclosures to the consumer." 12 C.F.R. § 1026.20(a).

The parties' dispute thus centers on whether the Second Amended Transaction was a "refinancing" under TILA.

"A refinancing occurs when an existing obligation . . . is *satisfied and replaced by a new obligation* undertaken by the same consumer." 12 C.F.R. § 1026.20(a) (emphasis added). The Official Interpretations to this regulation restate and amplify these strictures:

> A refinancing is a new transaction requiring a complete new set of disclosures. Whether a refinancing has occurred is determined by reference to whether the original obligation has been ***satisfied or extinguished and replaced by a new***

> *obligation, based on the parties' contract* and applicable law. The refinancing may involve the consolidation of several existing obligations, disbursement of new money to the consumer or on the consumer's behalf, or the rescheduling of payments under an existing obligation. *In any form, the new obligation must completely replace the prior one*.
>
> (i) Changes in the terms of an existing obligation, *such as the deferral of individual installments*, will not constitute a refinancing unless accomplished by the *cancellation* of that obligation and the *substitution of a new obligation*.

12 C.F.R. § Pt. 1026, Supp. I, Part 2 (emphases added).

The 2014 Second Amendment was not a refinancing under these rules. Nothing in that contract suggests that it was meant to "satisfy," "extinguish," or "completely replace" the existing loan with a "new obligation." "By its terms," the 2014 contract was an "amendment" that made a limited number of "modifications" to the existing note and deed.[20] Both in its terms and in its substantive effect the 2014 Second Amendment *affirmed* the existing obligation (both the debt and the security) and mainly "extend[ed] the [loan's] maturity date."[21] The 2014 contract thus expressly states: "The Note and Deed of Trust as amended by this Amendment are hereby *ratified* by Maker [*i.e.,* the plaintiffs] *in all respects*."[22] Sections 7 and 9 of the 2014 agreement confirm the persistence of the existing obligation. Both these sections provide: "Except as *modified* or *amended* herein, all terms and conditions of the Note shall *continue unmodified and in full force and effect*."[23]

There is no convincing way to read this as "cancelling" and "completely replacing" the prior loan with a "new obligation." See 12 C.F.R. § 1026.20(a); 12 C.F.R. Pt. 1026, Supp. I, Part 2 (official interpretation); *Castrillo v. Am. Home Mortg. Servicing, Inc.,* 670 F. Supp. 2d 516, 528 (E.D. La. 2009) (reaching same conclusion in face of similar contract terms). The 2014 Amendment was not a refinancing. It did not trigger new disclosure requirements or a new right of rescission.

---

[20] *See* ECF No. 69-3 at 2–4.

[21] *See id.* at 3–4.

[22] *Id.* at 4 (§ 8) (emphases added).

[23] *Id.* (§§ 7, 9) (emphases added).

## 2. Plaintiffs' Arguments

The plaintiffs' arguments do not convince otherwise. For starters, because it is a real analytical concern, it must be observed that the plaintiffs' argument throughout is conclusory and logically question-begging; it is exceptionally light on legal citation and wholly bereft of operative doctrinal analysis. This abrades Rule 12(b)(6)'s prescription that viable claims do not flow from "mere conclusory statements." *See Iqbal,* 556 U.S. at 679. Furthermore, the plaintiffs often fail to cogently tie their discussion to a joined issue. Which is to say, it is often unclear why the plaintiffs' discussion at any point matters — how it suggests that the 2014 Amendment triggered a new obligation to disclose and a new right to rescind. Such failings render much of the plaintiffs' discussion fundamentally unpersuasive. The court here addresses two of the plaintiffs' arguments that were most clearly stated or were most apparently connected to a material issue.

### 2.1 The Allegedly Increased APR

The plaintiffs contend that the 2014 Amendment increased the annual interest rate on their loan.[24] They recognize that the nominal interest rate under the 2014 Amendment remained the same (6%) as it had been under the existing loan.[25] They contend, however, that the 2014 Amendment contained "undisclosed" charges that made it a "high-cost mortgage" under TILA — particularly, under 15 U.S.C. § 1602(bb).[26] Such mortgages must be accompanied by additional disclosures. 15 U.S.C. § 1639.

Problems infect the plaintiffs' claim and arguments in this area. First, again as the plaintiffs recognize, the express terms of the 2014 Amendment do not modify the existing APR. Second, in the 2014 transaction, the plaintiffs agreed to pay the loan servicer with two tranches of checks covering the 15 months of May 2014 to July 2014. One batch of nine checks was to be delivered on June 5, 2014 to cover nine months of loan payments; a second batch of six checks was due on

---

[24] ECF No. 83 at 15–18.

[25] *Id.* at 16 ("The 2014 Transaction implies a 6% note rate, the same interest rate as agreed to in the previous" contract.).

[26] *Id.* at 15–18; 1st Am. Compl. – ECF No. 69 at 30–31 (¶ 127).

January 1, 2015 to cover six months of payments.[27] Nothing on the surface of this arrangement raises the APR. In trying to show that something was amiss with this, something that triggered the additional disclosure requirements of 15 U.S.C. § 1639, the plaintiffs offer a table estimating how the loan servicer would apply these payments, how they would be divided among principal, interest, and fees.[28] This table, as the Trust rightly observes, constitutes evidence beyond the allegations of the complaint and its integrated material. It cannot be considered on a motion to dismiss. Third, the plaintiffs' allegations and contentions in this area are rebutted by the 2014 Amendment's express terms. That contract expressly applied "no prepayment fee." And, apart from the maturity-date extension, the advance-check arrangement, and other term changes that do not affect this discussion, the 2014 Amendment expressly made "no other modifications" to the existing loan.[29]

Finally — and this point alone is dispositive — even if the 2014 Amendment did increase the APR, it still did not "cancel," "extinguish," and "completely replace" the plaintiffs' existing obligation. It therefore was not a "refinancing" and did not trigger new disclosure requirements or a new right of rescission.

Increased APRs can play a role in this area under 12 C.F.R. § 1026.20(a)(4). Given the allegations of the operative complaint, this regulation may be partly what the plaintiffs have in mind. Section 1026.20(a)(4) provides that, "The following shall not be treated as a refinancing: . . . . A change in the payment schedule . . . as a result of the consumer's default or delinquency, *unless the rate is increased* . . . ." (Emphasis added). The Official Interpretation to this section puts it this way: "A workout agreement is not a refinancing unless the annual percentage rate is increased or additional credit is advanced . . . ." 12 C.F.R. § Pt. 1026, Supp. I, Part 2. This exception does not make the 2014 Amendment a refinancing, even if it increased the loan's APR. Other considerations aside, in order to fall within § 1026.20(a)(4), a subsequent loan modification must

---

[27] ECF No. 69-3 at 3 (§ 2).

[28] ECF No. 83 at 17–18.

[29] For these last points, see ECF No. 69-3 at 3–4.

first meet the general definition of a refinancing. That is, it must first "satisfy" or "extinguish" the prior obligation and "completely replace" it with a new one. The Official Interpretations confirm this:

> A transaction is subject to § 1026.20(a) *only if it meets the general definition of a refinancing*. Section 1026.20(a)(1)through (5) lists 5 events that are not treated as refinancings, even if they are accomplished by cancellation of the old obligation and substitution of a new one.

12 C.F.R. Pt. 1026, Supp. I (emphasis added). This puts paid to the idea that an increased APR would itself make the 2014 Amendment a refinancing that triggered new disclosure obligations and rescission rights. *See In re Sheppard,* 299 B.R. 753, 761–62 (Bankr. E.D. Pa. 2003) ("[I]f the transaction is found not to be a refinancing when applying the general definition, the exceptions [in 12 C.F.R. § 1026.20(a)(1)–(5)] are not implicated.").

**2.2 Windeler's Absence From the 2014 Amendment**

Finally, the plaintiffs argue that the 2014 Amendment was not a refinancing essentially because the Windeler defendants were absent from it.[30] Over the course of these transactions — indeed, approximately four years before the 2014 Amendment — the plaintiffs assumed Windeler's obligations and replaced Windeler as debtor and mortgagor.[31] Yet, in the plaintiffs' (not entirely coherent) view, without Windeler as an obligor on the 2014 Amendment, the latter contract was "meaningless and without legal effect," could not have been an "amendment" or "loan modification," and must have been a refinancing.[32]

This is unpersuasive. The plaintiffs cite no authority to support their position. They make no legal or otherwise principled argument showing that Windeler's absence from the 2014 Amendment must have made that contract a wholly new loan — rather than what it purports to be, a continuation and amendment of the earlier obligation. It is unclear why Windeler's perspective should matter. Again, Windeler had been released from its obligations in 2010, when the plaintiffs

---

[30] *See* ECF No. 83 at 9–12.

[31] *See, e.g.,* ECF No. 69-3 at 2–3 (recitals).

[32] ECF No. 83 at 9–12.

bought the property and assumed its attendant obligations.[33] After that time the note and security interest bound only the plaintiffs and the Trust. So it is absolutely unclear why Windeler's absence from the 2014 Amendment should be at all relevant — to say nothing of legally decisive under TILA. Put differently, it is unclear why Windeler was needed to make the 2014 contract a mere amendment, rather than a refinancing, under TILA.

At all lengths, and other complications aside, the court holds as a matter of law that Windeler's absence as an obligor on the 2014 Amendment did not make that agreement a refinancing under TILA.[34]

### 3. Individual Claims Against Michael Littman

The plaintiffs' claims against Michael Littman, individually, are dismissed for the additional reason that Mr. Littman did not operate as an individual in the relevant transactions. His only role throughout was as trustee. Nothing in the record suggests otherwise. The claims against him individually are therefore dismissed with prejudice.

### 4. Supplemental Jurisdiction

The remaining claims against all defendants are creatures of California state law. The court has, in other words, "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(2). The court has considered the matter but, perhaps especially given that this lawsuit is in its earliest stages, can see no "pragmatic" reason why "economy, convenience, fairness, [or] comity" should incline it to retain this case in federal court. *See Pure Wafer Inc. v. Prescott, City of*, 845 F.3d 943, 960 (9th Cir. 2017). With no federal claim remaining in this suit, the court

---

[33] *See, e.g.,* ECF No. 69-3 at 2–3.

[34] For complete accuracy, it should be noted that Windeler was not wholly absent from the 2014 Amendment. Windeler agreed to and signed that contract in its role as second lienholder. (ECF No. 69-3 at 5.) It is hard to say exactly what role this should play in assessing the plaintiffs' analysis. It does, however, tend to undermine the plaintiffs' factual description on this point.

declines to exercise jurisdiction over the state-law claims under 28 U.S.C. §1367. The California-law claims are therefore dismissed without prejudice.

## CONCLUSION

The court grants the defendants' motions to dismiss. The TILA claims are dismissed with prejudice for failure to state a claim under Rule 12(b)(6). The claims against Michael Littman individually are dismissed with prejudice. The court declines to exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367; those claims are dismissed without prejudice. The Windeler defendants' motions to abstain from exercising jurisdiction, and for a more definite statement, are denied as moot.

This disposes of ECF Nos. 76 and 78.

**IT IS SO ORDERED.**

Dated: May 8, 2017

_____
LAUREL BEELER
United States Magistrate Judge